[Cite as *State v. Bubenchik*, 2014-Ohio-5056.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| STEVEN P. BUBENCHIK, JR. | : | Case No. 2014CA00020 |
| | : | |
| Defendant - Appellant | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case No. 2013CR1293

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      November 10, 2014

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                         DEREK LOWRY
Prosecuting Attorney                   Crawford, Lowry & Associates
                                         116 Cleveland Ave., NW
By: KATHLEEN O. TATARSKY        Suite 800
Assistant Prosecuting Attorney       Canton, OH 44702
110 Central Plaza, South, Suite 510
Canton, OH 44702

*Baldwin, J.*

{¶1}   Appellant Steven P. Bubenchik, Jr. appeals a judgment of the Stark County Common Pleas Court convicting him of attempted murder (R.C. 2903.02(A)) with a repeat violent offender specification and a firearm specification, two counts of felonious assault (R.C. 2903.11(A)(2)) with repeat violent offender specifications and firearm specifications, and having weapons under disability (R.C. 2923.13(A)(2)). Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2}   During the evening of August 8, 2013, the Massillon Police Department received a call from appellant's wife, who was not living with him at the time. She told police that she received a voice mail message from appellant, stating that he would see her in the next lifetime. Massillon police officers Rogers, Alexander and Riccio went to appellant's home for a "welfare check." They knocked on doors, shined lights in the windows, and attempted to make contact with anyone who might be inside. Although two vehicles were in the driveway, officers saw no lights on in the home and no movement inside. The officers left.

{¶3}   Appellant's wife called the police department again, expressing concern that appellant had harmed himself. Sgt. Kenneth Smith asked dispatch to try to find a family member, and dispatch reached appellant's parents. Officers Smith, Rogers, Riccio and Alexander went back to appellant's home with appellant's parents. Sgt. Smith learned that appellant had been questioned earlier that day by Det. Bobby Grizzard, who investigates child sexual abuse cases.

{¶4}　The officers and appellant's parents walked around the house, knocked on the door, shined lights in the windows, and called out to whoever might be inside. No one inside responded, and after about ten minutes, appellant's parents asked police to leave, believing appellant might come out if the police were not present. The officers left, parked their cruisers several blocks away, and waited.

{¶5}　After waiting ten minutes, the officers returned and met appellant's parents in the driveway. The parents were unable to make contact with appellant and wanted police to enter the home.

{¶6}　The officers found an open window on the front porch and pushed up the screen. Officer Riccio entered the residence through the window and began moving to the front door to unlock it for the other officers. He announced himself as a Massillon Police Officer when he entered through the window, and Sgt. Smith also yelled, "We're here to check on your welfare, we want to make sure you're okay."

{¶7}　After Officer Riccio entered through the window, the officers on the porch heard a gunshot from inside. Riccio came back outside through the window and the officers scattered, seeking cover. A man ran out the front door and was taken to the ground and handcuffed. The man was later identified as appellant's brother.

{¶8}　Officers took cover behind their cruisers. Sgt. Smith saw appellant leaning out a window with his firearm, yelling, "I'm going to kill you mother fuckers." Appellant began shooting at the officers from the window. The officers did not return fire, fearing someone else was inside. A SWAT team was called and negotiations began with appellant. After about three hours, appellant put down his pistol, exited the home and surrendered to police.

{¶9} Appellant was charged with three counts of attempted murder and three counts of felonious assault, all with repeat violent offender specifications and firearm specifications, and having weapons under disability. He filed a motion to suppress which was overruled by the court. The case proceeded to jury trial. The jury found him not guilty of attempted murder as to Officer Riccio and Sgt. Smith, guilty of attempted murder as to Officer McConnell, guilty of felonious assault as to all three officers, and guilty of having weapons under disability. The court merged the felonious assault conviction with the attempted murder conviction as to Officer McConnell. Appellant was sentenced to 11 years incarceration for attempted murder, 11 years incarceration for each felonious assault, 36 months incarceration for having weapons under disability to run concurrently, 9 years incarceration on the three firearm specifications and two years incarceration on each repeat violent offender specification, for a total sentence of 48 years.

{¶10} Appellant assigns a single error on appeal:

{¶11} "THE TRIAL COURT'S DENIAL OF THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS WAS AN ERROR OF LAW."

{¶12} Appellant argues that the court erred in overruling his motion to suppress. He argues that appellant's wife's call to the police did not constitute exigent circumstances justifying a warrantless entry into the home, and that his acts of shooting at the officers did not constitute a new criminal act.[1]

{¶13} A warrantless police entry into a private residence is not unlawful if made upon exigent circumstances, a "specifically established and well-delineated exceptio[n]"

---

[1] Although the State argued in the trial court that the exclusionary rule did not apply because appellant's actions constituted a new criminal act, the trial court did not address this argument and instead found the warrantless entry justified by exigent circumstances.

to the search warrant requirement. *State v. Applegate*, 68 Ohio St.3d 348, 349-50, 626 N.E.2d 942, 944 (1994), citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967). "The need to protect or preserve  life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." *Mincey v. Arizona*, 437 U.S. 385, 392–393, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978).

{¶14} The emergency aid exception does not require probable cause, but the officers must have reasonable grounds to believe there is an immediate need to act in order to protect lives or property, and there must be some reasonable basis for associating an emergency with the location.  *State v. Gooden*, 9th Dist. Summit No. 23764, 2008-Ohio-178, ¶10.

{¶15}  In *State v. Bethel*, 5th Dist. Tuscarawas No. 10-AP-35, 2011-Ohio-3020, a 911 call was placed by Community Mental Health, reporting that the defendant was talking about weapons and shooting someone.  Police responded to a dispatched call that the defendant had guns in the house and had threatened to commit suicide or hurt others.  When officers arrived, they saw the defendant exit the home, and they secured him.  However, they entered the home to determine if there were other people in the residence.  Once inside, they observed drugs and drug paraphernalia.  The trial court found that exigent circumstances did not support the entry and search of the home. This Court reversed, finding that the entry into the home was necessary to protect others possibly in the residence, was reasonably related to those circumstances, and was necessary to verify the defendant's reports to Community Mental Health.  *Id*. at ¶30.

{¶16} In the instant case, police received a call from appellant's wife reporting that appellant left her a voice message saying he would see her in the next lifetime. Although two vehicles were in the driveway, officers who responded to the initial report were unable to get a response from inside the home.

{¶17} Appellant's wife called a second time, asking police to go to appellant's house again. Appellant's parents accompanied police. There were still two vehicles in the driveway. Police and appellant's parents were unable to get a response from anyone inside the house, even though they made enough noise that neighbors began coming outside to see what was happening. Police left, and appellant's parents were unable to get appellant to answer the door in the absence of a police presence at the scene. Sgt. Smith knew that appellant had been questioned earlier in the day by Massillon Police Detective Bobby Grizzard who, according to Sgt. Smith, generally handles serious charges involving child sexual abuse. According to Smith's testimony at the suppression hearing, when police returned and met with appellant's parents, Smith believed "it was starting to dawn on them" that appellant might have harmed himself. Tr. 19. He then asked the parents if they wanted police to try to get inside. He told them he'd "hate to leave the scene if this guy did something to himself and he's in there and he still could be saved." Tr. 19.

{¶18} Based on the evidence presented at the suppression hearing, the facts known to the police at the time Officer Riccio entered the home gave them reasonable grounds to believe that entry into the home was necessary to insure that appellant had not attempted to harm himself. The trial court did not err in finding the warrantless entry to be justified based on the exigent circumstances exception.

{¶19} Because we find the trial court did not err in overruling the motion to suppress on the basis of exigent circumstances, we need not reach the issue of whether appellant's actions in shooting at the police officers constituted a separate act.

{¶20} The assignment of error is overruled.   The judgment of the Stark County Common Pleas Court is affirmed.  Costs are assessed to appellant.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.